UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GREGORY R. MARLOR,

               Plaintiff,

    v.

THE HOUSING COMPANY,

               Defendant.

Case No. 1:24-cv-00573-AKB

**INITIAL REVIEW ORDER BY
SCREENING JUDGE**

Pending before the Court is Plaintiff Gregory R. Marlor's Complaint and Supplements (Dkts. 2, 5, 7); In Forma Pauperis Application and Second In Forma Pauperis Application (Dkts. 1, 6); and Motion to File Complaint (Dkt. 3). Pursuant to 28 U.S.C. § 1915, this Court must review Marlor's request to determine whether he is entitled to proceed in forma pauperis, which permits civil litigants to proceed without prepayment of the full filing fee or to pay the filing fee over time. 28 U.S.C. § 1915(a)(1). The Court must also undertake an initial review of Marlor's complaint to ensure it meets the minimum required standards. *See* 28 U.S.C. § 1915(e)(2).

For the reasons below, the Court will grant Marlor's application to proceed in forma pauperis and will allow him to pay the filing fee over time. Further, the Court finds, as discussed below, Marlor's complaint alleges one plausible claim related to his request for accommodation in July 2023.

## I.     APPLICATION TO PROCEED IN FORMA PAUPERIS

Any party instituting a civil action in a federal district court is required to pay a filing fee. 28 U.S.C. § 1914. On application, however, a party may proceed in forma pauperis. 28 U.S.C.

§ 1915. The Court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). To qualify for in forma pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets he possesses and that indicates he is unable to pay the fee required. *Id.* The affidavit is sufficient if it states the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide the "necessities of life" for him and his dependents. *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks omitted) (quoting *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)).

The Court has reviewed Marlor's second in forma pauperis application, which reports that Marlor receives $2,215.00 in income from Social Security disability payments and reports monthly living expenses of $2,208.00, including $712.00 for rent, $10 for eating out, $11 for vaping, and $400 for "Molina Uber Service. (Dkt. 6 at 3). While Marlor appears to spend what he receives in disability payments, it appears with some budgeting adjustments he could pay the requisite filing fees. Accordingly, the Court will require Marlor to pay the filing fee but will allow Marlor to pay the fee over time to reduce the financial burden. Marlor will be required to pay the fee in $100 monthly installments.

## II.     SUFFICIENCY OF COMPLAINT

### A.  Screening Requirement and Pleading Standards

The Court is required to screen complaints brought by litigants who seek in forma pauperis status. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint, or any portion thereof, if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted;

or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

To state a claim for relief, a plaintiff's complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Facial plausibility exists when the plaintiff sets forth factual content from which this Court can reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Conclusory allegations and bare recitations of the elements of a cause of action, however, are insufficient to survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint fails to state a claim for relief if its claims are time-barred by the relevant statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007). "Courts may dismiss complaints in initial review orders sua sponte when the complaint is time-barred by the relevant statute of limitations." *Bartholomew v. Kralik*, No. 2:24-CV-00194-AKB, 2024 WL 3329143, at *2 (D. Idaho July 8, 2024); *c.f. Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (concluding a district court may sua sponte dismiss a complaint as untimely so long as the defendant has not waived the defense). When a statute of limitations issue has been identified by the Court, the plaintiff must be given an opportunity to respond. *Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001).

During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Even so, plaintiffs—whether represented or not—have the burden of articulating their claims clearly and alleging facts sufficient to support review of each claim. *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Additionally, if amending the complaint would remedy the

deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B. Factual Allegations[1]**

Plaintiff Gregory Marlor suffers from multiple disabilities, including partial paralysis, requiring him to use a wheelchair. He receives Social Security disability benefits. In September 2021, Marlor applied for housing at Thomas Logan Apartments, which is a Low-Income Tax Credit property in Boise, Idaho, managed by Defendant The Housing Company ("THC").

Marlor alleges that he initially qualified for an accessible one-bedroom apartment featuring grab bars and side-by-side laundry appliances, with monthly rent of $520. THC's background check revealed Marlor had a drug possession charge more than two decades earlier, resulting in denial of his application. Marlor contends this charge, which he characterizes as more than twenty years old, raised no legitimate safety concerns and could have been readily verified through county records.

In November 2021, THC recertified Marlor and offered him a non-accessible studio apartment with rent of $620 per month. This studio unit lacked grab bars, contained a stacked washer-dryer configuration inaccessible to wheelchair users, and failed to meet accessibility standards. THC denied Marlor's appeal in December 2021, upholding its decision based on what Marlor describes as a "conflicting 35-year-old case." Although THC subsequently approved his application, the company claimed that more qualified applicants had advanced ahead of him on the waiting list for accessible units. Despite the studio's deficiencies, Marlor moved into the unit

---

[1]     The Court gleans the factual allegations from two documents, each identified on the docket as a "Supplement re Complaint" and titled "Housing Discrimination Claims, filed on January 6, 2025, and January 16, 2025, respectively (Dkts. 5, 7). From the Court's review, the two documents appear substantively identical.

in February 2022 after he allegedly represented that he would wait approximately one year before transferring to an accessible unit.

Concurrent with Marlor's moving into the studio apartment, THC implemented a key-card entry system in February 2022. This system required visitors to contact residents for building access. Marlor alleges the system created additional barriers for him and violated accessibility U.S. Department of Housing and Urban Development (HUD) regulations by mandating an accessible entry route equipped with a doorbell. Although Marlor requested accommodations, including doorbell installation at the building entrance, he claims THC ignored these requests.

In July 2022, an accessible unit became available. Marlor alleges that management increased the rent, refused to honor his original qualifying documents for a lower rental rate, and failed to timely process his transfer request, effectively removing him from the waiting list and preventing him from obtaining the unit.

A new onsite manager assumed the position in April 2023. Marlor informed her that the building's entry door constituted a barrier to access, explaining that visitors' inability to contact residents discriminated against both visitors and residents. He requested that she investigate the door access issues and provided her with ADA regulations demonstrating that buildings must provide a method for visitors to contact residents via a doorbell at the main entrance, allowing visitors to alert residents of their arrival. When Marlor characterized the building access as a barrier, she responded, "According to you."

Not long after, in July 2023, new management offered Marlor a transfer to an accessible one-bedroom for $879 per month, with a pending $20 increase. Marlor declined, believing he should be transferred at his original qualifying rent. In November 2023, he was again offered a

transfer, which he accepted; but then he was told in December 2023 that his income was too high to qualify for federally assisted housing.

Marlor alleges that despite submitting repeated requests to three onsite managers, five regional managers, and higher-level staff members, THC has not granted him a transfer to an accessible one-bedroom unit. He maintains that THC denied his requests because of his disabilities rather than his criminal history or income level. He further alleges that THC ignored his requests for accommodation regarding the key-card entry system, including his specific request for doorbell installation. Marlor continues to reside in the non-accessible studio apartment, which he maintains fails to accommodate his disabilities and wheelchair use.

## C.  Discussion

Marlor brings his claims under the Fair Housing Act (FHA), 42 U.S.C. § 3604(f). The FHA makes unlawful discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2)(A). Discrimination may be shown through refusal to make "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a); *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997).

To state a claim of FHA disability discrimination, Marlor must allege sufficient facts demonstrating: (1) he is disabled "within the meaning of 42 U.S.C. § 3602(h)"; (2) THC "knew or should reasonably be expected to know of" Marlor's disabilities; (3) the requested accommodation "may be necessary to afford" Marlor "an equal opportunity to use and enjoy the dwelling"; (4) the accommodation request was "reasonable"; and (5) THC "refused to make the requested

accommodation." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *see also* 42 U.S.C. § 3604(f)(3)(B).

Marlor argues that THC discriminated against him because of his disabilities by failing to make a reasonable accommodation to provide him with an accessible one-bedroom apartment and a doorbell at the main entrance for accessible entry for visitors. He states, "THC's onsite managers, regional managers, assets managers, program coordinators, architects, and owner; are all liable, more for some and less for others, but none the less they are responsible for the discrimination against Marlor's disabilities at that continued [sic] from when he filled out THC's application for the Logan in 2021, until the end of the 2024 year" (Dkt. 7 at 14).

### 1. Time-Barred Claims

The FHA imposes a two-year statute of limitations that begins to run from "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The Supreme Court has established that "a discrete retaliatory or discriminatory act 'occurred' on the day that it happened." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). A discrete act constitutes a separate, actionable unlawful practice that is temporally distinct. *Id.* at 114. Once a discrete act occurs, the limitations period begins to run immediately, and such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

As the Ninth Circuit has made clear, courts must not conflate "a continuing violation with the continuing effects of a past violation." *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1247-48 (9th Cir. 2003) (distinguishing between continuing violation and continuing effects of a past violation in rejecting argument that denial of proposed accommodation constituted a continuing violation). The continuing effects of past

discrimination "cannot breathe life into prior, uncharged discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

Marlor filed this action on November 27, 2024. Accordingly, only discriminatory acts occurring on or after November 27, 2022, fall within the FHA's two-year limitations period. Marlor's core allegations involve discrete acts that occurred well before this date: THC denied Marlor's initial application for accessible housing in September 2021; THC recertified Marlor for a non-accessible studio apartment in November 2021; THC denied Marlor's appeal of the initial denial in December 2021; THC placed Marlor in the non-accessible unit and implemented the key-card entry system in February 2022; and THC allegedly manipulated pricing for the accessible unit and failed to properly process Marlor's transfer request in July 2022. Each of these actions constitutes a discrete discriminatory act under *Morgan*; each "occurred" when THC made the relevant decision or took the challenged action; and each falls outside the two-year limitations period.

### a.  The Continuing Violation Doctrine

Marlor appears to argue that his continued residence in the non-accessible unit constitutes a continuing violation that extends the limitations period. This argument fails for two reasons. First, Marlor's ongoing occupancy of the studio apartment represents merely the continuing effects of THC's allegedly discriminatory housing decisions made in 2021 and 2022. The Ninth Circuit has consistently rejected attempts to recharacterize continuing effects as continuing violations. *See Garcia*, 526 F.3d at 463 (en banc). That Marlor continues to experience the consequences of THC's earlier decisions does not transform those time-barred acts into timely claims.

Second, a plaintiff cannot circumvent the statute of limitations by characterizing discrete housing decisions as part of a broader discriminatory "practice" or "policy." *Cherosky*, 330 F.3d at 1247. Under the FHA, each discriminatory act—whether a denial of housing, rejection of an accommodation request, or imposition of unfavorable terms—stands as a separate, actionable event. *Id.* Even accepting Marlor's assertion that THC's decisions flowed from a discriminatory policy, this does not revive claims based on discrete acts that occurred outside the statutory period.

For a continuing violation to exist, Marlor must demonstrate an ongoing policy or practice of discrimination "that continues into the limitations period." *Garcia*, 526 F.3d at 461-62; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). He has not done so. Instead, he alleges a series of discrete discriminatory acts—each complete when it occurred. These allegations are insufficient to invoke the continuing violation doctrine.

### b.  FHA's Tolling Provision

The FHA's tolling provision also does not appear to save Marlor's claims relating to acts which occurred before November 2022. The FHA's tolling provision excludes from the two-year limitation period any time during which a complaint is pending with the HUD. 42 U.S.C. § 3613(a)(1)(B). The FHA's tolling provision only applies when a complaint is timely filed with HUD—that is, within one year of the discriminatory practice under 42 U.S.C. § 3610(a)(1)(A).

Marlor states he filed a complaint with HUD in January 2023. Based on Marlor's allegations, however, HUD never opened an investigation into his claims. Marlor states he filed the complaint with HUD in January 2023, heard nothing, and followed up "after waiting several months," and was informed by a HUD specialist that the case had never been opened. When Marlor recounted the details of his complaints, the specialist told Marlor that his claims were not timely because they had occurred more than a year prior to his filing in his complaint with HUD in January

2023 (Dkt. 7 at 1). In January 2024, after THC again denied his transfer request to move to an accessible unit, Marlor again contacted HUD to file a complaint. After Marlor provided a "detailed timeline of events," HUD responded it would take no further action regarding his inquiry, explaining it is not discrimination if policy applies uniformly to all building residents and no request for accommodation is made (*id.* at 2, 13).

These communications with HUD demonstrate that no administrative action was taken on Marlor's complaints, and there is no time to exclude to extend the two-year statute of limitations on Marlor's FHA claim. *See Guion v. Bonner Homeless Transitions Bd. of Directors*, No. 2:18-CV-00186-DCN, 2020 WL 1666765, at *5 (D. Idaho Apr. 2, 2020), *aff'd sub nom. Guion v. Bonner Homeless Transitions*, No. 20-35378, 2021 WL 5356528 (9th Cir. Nov. 17, 2021) (explaining HUD never acted on plaintiff's administrative complaint so there was no excluded time extending the FHA limitation's period).

Further, at least with respect to THC's initial denial of Marlor's request for an accessible unit in September 2021 and his appeal in December 2021, Marlor did not timely file an administrative complaint with HUD, as more than a year had passed since these events occurred when Marlor first contacted HUD in January 2023. "There being no timely filed administrative complaint with HUD, there is no basis for application of the statutory tolling provision." *Fair Hous. Council of Oregon v. Cross Water Dev., LLC*, No. C08-5755 FDB, 2009 WL 799685, at *2 (W.D. Wash. Mar. 24, 2009) (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256-57 (5th Cir. 1993) (When an administrative remedy request is submitted after the limitations period has expired, tolling does not apply to the period of time during which the grievance is pending).

### c.  Equitable Tolling and Equitable Estoppel

Finally, neither the doctrines of equitable tolling nor equitable estoppel apply to extend the limitations period. Equitable tolling "focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (quotation marks and citation omitted). "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit," sometimes referred to as "fraudulent concealment." *Id.*

Equitable tolling "simply doesn't apply here, as this is not a case where the plaintiff was injured within the limitations period yet unable to determine the source of his injury." *Garcia*, 526 F.3d at 465 n.8. Concerning equitable estoppel, Marlor does not allege THC took any action to prevent him from filing a timely claim. Thus, these doctrines do not provide a basis to toll the two-year limitations period.

### d.  Opportunity to Respond

In short, no basis appears to toll or extend the two-year limitations period, and any FHA claim arising from allegedly discriminatory acts occurring before November 2022 is time barred. Claims filed outside the statute of limitations period are considered legally frivolous and subject to dismissal. *Fogle v. Pierson*, 435 F.3d 1252, 1258-59 (10th Cir. 2006); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (citing *Gartrell*, 981 F.2d at 256); *see also Bartholomew*, 2024 WL 3329143, at *2.

As noted above, however, when the Court identifies a statute of limitations issue sua sponte, the plaintiff must be given an opportunity to respond. *Herbst*, 260 F.3d at 1042 n.3.

Accordingly, Marlor is hereby notified of the Court's intention to dismiss any claims based on any acts by THC occurring before November 27, 2022. If Marlor desires to respond and show the Court he can satisfy the statute of limitations, he may elect to file a motion and supporting memorandum showing that his claims based on acts before November 27, 2022, are timely or that their untimeliness is excused.

### 2. Claims Based on Acts After November 27, 2022 Fail to State a Claim

Marlor references four events occurring within the limitations period, but with one exception, none states a plausible claim for disability discrimination. In July 2023, an on-site manager informed Marlor he was fifth on the waiting list for an accessible one-bedroom and offered him unit 504 for $879 per month. This interaction does not constitute a denial of accommodation but rather an offer of the exact type of unit Marlor sought—an accessible one-bedroom apartment. That the rent was substantially higher than the $520 he originally qualified for in 2021 does not, without more, establish disability discrimination. Marlor has not alleged that the $879 rent was different from what THC charged other tenants for similar units; non-disabled tenants received preferential pricing; or the rent increase was implemented because of his disability rather than market conditions or the passage of time. Indeed, the offer of an accessible unit suggests THC was willing to accommodate his disability-related housing needs, albeit at current market rates.

In November 2023, Marlor was informed that a fully accessible apartment was becoming available. This notification similarly fails to support a discrimination claim. THC was affirmatively reaching out to inform Marlor about an accommodation that would meet his needs. Marlor does not allege what happened after this notification—whether he pursued the unit, whether

it was ultimately denied to him, or whether any adverse action was taken because of his disability. A notification of availability cannot constitute discrimination.

Most significantly, in January 2024, Marlor received an email stating he could not transfer because he "made too much money." This denial explicitly invokes income eligibility criteria, which are facially neutral requirements in affordable housing programs. Income limits typically apply to all residents regardless of disability status. Marlor has not alleged that THC applied different income standards to him than to non-disabled residents, manipulated his income calculation because of his disability, or used income requirements as a pretext for disability discrimination. Without such allegations, THC appears to have been applying program eligibility requirements rather than disability discrimination.

The critical deficiency in these post-November 2022 allegations is that Marlor has not connected any of THC's actions to his disability. He has not alleged that he made specific requests for reasonable accommodations, which THC denied; THC treated him differently than similarly situated non-disabled tenants; or any THC employee made statements suggesting disability-based animus. That a disabled tenant is denied something or charged market rates does not, without more, establish discrimination.

Marlor, however, does state one plausible claim not barred by the statute of limitations. He alleges that he informed THC's new on-site manager in April 2023 that the key-card entry system impedes access to the building for visitors to those with disabilities; he requested THC install a doorbell at the main entrance as an accommodation and in compliance with federal regulations; but THC management denied his request. Liberally construed, Marlor's allegations state a plausible claim that Marlor requested a reasonable accommodation that "may be necessary to

afford" Marlor "an equal opportunity to use and enjoy dwelling," and THC refused to make the requested accommodation. *Kalakaua*, 453 F.3d at 1179. He may therefore proceed on this claim.

### 3. Additional Defendants

In his Complaint, Marlor names THC as the only defendant (Dkt. 2). In two supplemental filings, however, Marlor lists as defendants: "Thomas Logan Apartment's Owner Clay Barr, Architect Pivit [sic] North, The Housing Company's Asset Manager, Six Regional Managers, Three On-Site Managers, Any and All Employees Associated with the Discrimination In this Compliant [sic], Any and All Third Party Participants Who Knew and Did Not Intervene" (Dkts. 5, 7 at 1). Simply listing these individuals and entities in supplements to the complaint does not properly state a plausible claim against any of them, and the claims against them are dismissed to the extent Marlor sought to name them as defendants.

## D. Conclusion

Marlor may proceed as outlined above. This Order does not guarantee his claims will be successful. Rather, it merely finds that he has stated a plausible claim that THC denied his request for a reasonable accommodation in July 2023, and this claim falls within the two-year limitation period for filing claims under the FHA. This Order is not intended to be a final or a comprehensive analysis of Marlor's claims, but it is only a determination that one or more of Marlor's claims is plausible and should proceed to the next stage of litigation. THC may still file a motion to dismiss or for summary judgment if the facts and law support such a motion.

## III.    ORDER

**IT IS ORDERED that:**

1.    Plaintiff Gregory R. Marlor's Second Application for Leave to Proceed In Forma Pauperis (Dkt. 6) is **GRANTED**. Marlor will be required to pay the filing fee in $100 monthly installments.  Marlor shall make such payments to the Clerk of the Court, on or before the least

day of each month, until the filing fee is paid in full. Failure to pay the filing fee may result in the dismissal this action.

    2.    Marlor's In Forma Pauperis Application (Dkt. 1) is **DENIED as MOOT.**

    3.    Marlor's Motion to File Complaint (Dkt. 3) is **DENIED as MOOT**.

    4.    Marlor may proceed on his reasonable accommodation claim arising from his request made in July 2023 against Defendant The Housing Company. All other claims are **DISMISSED** without prejudice. If Marlor later discovers facts sufficient to support a claim that has been dismissed, he may move to amend the complaint to assert such claims.

    5.    If Marlor wishes to proceed on claims arising from acts that occurred prior to November 27, 2022, he may file a motion and supporting memorandum ***within thirty (30) days from entry of this Order*** showing that his such claims are timely or that their untimeliness is excused. Failure to file such a motion and supporting memorandum within the ordered time frame will result in the dismissal of such claims ***WITH PREJUDICE and without further notice***.

    6.    Defendant The Housing Company will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court **within thirty (30) days**. If THC chooses to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 2), the Attachments to the Complaint (Dkts. 2-1, 2-2), and two Supplements (Dkts. 5, 7), this Order, and a Waiver of Service of Summons directly to THC as follows, because no regularly appearing attorney is listed on file for THC:

    The Housing Company
    P.O. Box 6943,
    Boise, ID 83707-0943

7.      THC has **sixty (60) days** from the date entered on the form to sign and file the waiver *if* it chooses to waive service. ***THC is not required to waive service, and no default judgment can be requested or entered because of a failure to waive service***.

8.      If THC does not waive formal service of process by returning the Waiver of Service of Summons, the Clerk of Court will engage the United States Marshal Service to serve Defendant THC personally, and THC may be ordered to pay the service of process fees. *See* Federal Rule of Civil Procedure Rule 4(d).

9.      Entry of default cannot be requested until after a waiver has been signed and returned and an answer not filed within the appropriate time frame, or THC is personally served by the U.S. Marshal Service and does not file an answer within the appropriate time frame. Again, entry of default cannot be requested simply because a waiver was sent to THC, but THC never signed and returned it.

10.     Pursuant to General Order 457, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: September 03, 2025

Amanda K. Brailsford
U.S. District Court Judge